**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
----------------------------------------------------------X
                                      :
K2 GLOBAL PARTNERS LLC,               :
K2 INTELLIGENCE, INC., and            :
K2 INTELLIGENCE, LLC,                 :
                                      :
         Plaintiffs and               :
         Counterclaim-Defendants,     :
                                      :
                                      :          Case No. 13-cv-5354 PAE / KNF
         v.                           :
                                      :
K2 ADVISORS, L.L.C., and              :
K2/D&S MANAGEMENT CO., L.L.C.,        :
                                      :
         Defendants and               :
         Counterclaim-Plaintiffs.     :
                                      :
----------------------------------------------------------X
```

## K2 ADVISORS, L.L.C. AND K2/D&S MANAGEMENT CO., L.L.C.'S ANSWER AND COUNTERCLAIMS AGAINST K2 GLOBAL PARTNERS LLC, K2 INTELLIGENCE, INC., AND K2 INTELLIGENCE, LLC.

Counterclaim-Plaintiffs and Declaratory Judgment Defendants K2 Advisors, L.L.C. and K2/D&S Management Co., L.L.C. (together, "K2 Advisors"), answer Declaratory Judgment Plaintiffs and Counterclaim-Defendants K2 Global Partners L.L.C., K2 Intelligence, Inc. and K2 Intelligence, L.L.C.'s ("K2 Intelligence" or "DJ Plaintiffs") Complaint for Declaratory Judgment, with paragraphs numbered to correspond to the numbered paragraphs of the Complaint, as follows:

K2 Advisors denies each and every allegation contained in the Complaint that is not expressly admitted below.  Any factual allegation below is admitted only as to the specific admitted facts, not as to any purported conclusions, characterizations, implications, or speculations that may follow from the admitted facts.  K2 Advisors denies that DJ Plaintiffs are entitled to the relief requested or any other relief.

## THE PARTIES

1.      K2 Advisors is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1 of the Complaint, and on that basis denies the same.

2.      K2 Advisors is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 2 of the Complaint, and on that basis denies the same.

3.      K2 Advisors is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3 of the Complaint, and on that basis denies the same.

4.      K2 Advisors admits the allegations in Paragraph 4 of the Complaint.

5.      K2 Advisors admits the allegations in Paragraph 5 of the Complaint.

## NATURE OF ACTION

6.      K2 Advisors admits that DJ Plaintiffs filed a declaratory judgment action against K2 Advisors arising under the trademark and unfair competition laws of the United States, 15 U.S.C. § 1051 *et seq.*, and related states laws and the common law concerning trademark rights, trademark infringement and unfair competition, but K2 Advisors denies that there is a basis for DJ Plaintiffs' claim and further denies that DJ Plaintiffs are entitled to any relief.

## JURISDICTION AND VENUE

7.      K2 Advisors admits that DJ Plaintiffs filed a declaratory judgment action against K2 Advisors pursuant to the Federal Declaratory Judgment Act, 15 U.S.C. §§ 2201-02 and the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and that subject matter jurisdiction is based on 28 U.S.C. §§ 1331 and 1367, but K2 Advisors denies that there is a basis for DJ Plaintiffs' claim and further denies that DJ Plaintiffs are entitled to any relief.

8.      K2 Advisors admits that it has transacted business within this judicial district and that it provides financial services to members that reside within this judicial district, but denies the remaining allegations in Paragraph 8 of the Complaint.

9.      K2 Advisors admits that venue in this judicial district is based on 28 U.S.C. § 1391(b) and that it has transacted business in this judicial district, but denies that there is a basis for DJ Plaintiffs' claim and further denies that DJ Plaintiffs are entitled to any relief.

## FACTS

10.      K2 Advisors is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 10 of the Complaint, and on that basis denies the same.

11.      K2 Advisors is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 11 of the Complaint, and on that basis denies the same.

12.      K2 Advisors admits that it offers hedge fund investing services, and that its company's website is located at www.k2advisors.com, but further offers other financial services, including but not limited to, risk management services, including consultation, due diligence, and risk planning, among other services.

13.      K2 Advisors admits the allegations in Paragraph 13 of the Complaint.

## THE EXISTENCE OF AN ACTUAL CONTROVERSY

14.      K2 Advisors admits the allegations in Paragraph 14 of the Complaint.  K2 Advisors admits that a copy of the letter sent to Jules B. Kroll from K2 Advisors' counsel dated April 19, 2011 is attached to the Complaint as Exhibit A.

15.      K2 Advisors admits the allegations in Paragraph 15 of the Complaint, but denies the allegations to the extent that they suggest there were no further communications between April 19, 2011 and March 21, 2013.  K2 Advisors admits that a copy of the letter sent to DJ

Plaintiffs' counsel from K2 Advisors' counsel dated March 21, 2013 is attached to the Complaint as Exhibit B.

16.     K2 Advisors admits the allegations in Paragraph 16 of the Complaint.

17.     K2 Advisors admits the allegations in Paragraph 17 of the Complaint.

18.     K2 Advisors admits that DJ Plaintiffs' counsel sent a letter to K2 Advisors' counsel dated June 19, 2013, and that a copy of the letter sent to K2 Advisors' counsel from DJ Plaintiffs' counsel dated June 19, 2013 is attached to the Complaint as Exhibit C.

19.     K2 Advisors admits the allegations in Paragraph 19 of the Complaint.

20.     K2 Advisors admits that the parties had not yet resolved the dispute as of the date the Complaint was filed, but denies the allegations to the extent that they suggest the settlement discussions, conducted a mere two days prior to the filing of the Complaint, were not productive. K2 Advisors further states that Paragraph 20 of the Complaint contains conclusions of law to which no response is required.  To the extent that a response is required, K2 Advisors admits that there exists a real and actual controversy today, but denies the remaining allegations contained in Paragraph 20 of the Complaint.

## COUNT I

### Declaratory Judgment – No Trademark Infringement and Unfair Competition

21.     K2 Advisors incorporates by reference its responses to Paragraphs 1 through 20 of the Complaint.

22.     Paragraph 22 of the Complaint contains conclusions of law to which no response is required.  To the extent a response is required, K2 Advisors admits that DJ Plaintiffs filed a Complaint with allegations under the Lanham Act, 15 U.S.C. § 1051 *et seq*., the New York General Business Law, and New York common law, but denies that there is a basis for DJ Plaintiffs' claim and further denies that DJ Plaintiffs are entitled to any relief.

23.     Paragraph 23 of the Complaint contains conclusions of law to which no response is required.  To the extent a response is required, K2 Advisors admits the allegations therein.

24.     Paragraph 24 of the Complaint contains conclusions of law to which no response is required.  To the extent a response is required, K2 Advisors denies the allegations therein.

## PRAYER FOR RELIEF

K2 Advisors denies that DJ Plaintiffs are entitled to declaratory judgment, an injunction of any kind, judgment against K2 Advisors for any sum or sums, or any other relief whatsoever. Specifically, K2 Advisors denies the allegations set forth in Paragraphs A through C of the Complaint and denies that DJ Plaintiffs are entitled to any relief whatsoever.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

DJ Plaintiffs have failed to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

DJ Plaintiffs are not entitled to any relief because they have sustained no injury or damages.

### THIRD AFFIRMATIVE DEFENSE

DJ Plaintiffs are not entitled to an injunction because there exists an adequate remedy at law.

### FOURTH AFFIRMATIVE DEFENSE

DJ Plaintiff's claims are barred in whole or in part by the doctrine of unclean hands.

## FIFTH AFFIRMATIVE DEFENSE

K2 Advisors hereby gives notice that it intends to rely on such other and further defenses as may become available or apparent during discovery proceedings in this case and hereby reserves the right to amend its Answer and to assert any such defenses.

## COUNTERCLAIMS

By and for its counterclaims against DJ Plaintiffs ("Counterclaim-Defendants"), K2 Advisors alleges as follows:

## INTRODUCTION

1.      K2 Advisors has spent nearly twenty years building its brand in the financial services industry.  K2 Advisors manages approximately $9.5 billion (as of August 1, 2013), and has established itself as a world-class fund of hedge funds manager and a recognized name in the financial services industry.  Through K2 Advisors' prominent, exclusive, and continuous use of the K2 and K2 ADVISORS trade names and marks (the "K2 Advisors Marks"), consumers have come to recognize the K2 Advisors Marks as signifying a highly-regarded business and hedge fund financial investment services, which include financial solutions such as due diligence, risk assessment, and investment risk analysis services.  Counterclaim-Defendants have infringed and continue to infringe upon K2 Advisors' long-established rights through their use of marks that incorporate and emphasize the salient portion of the K2 Advisors Marks (i.e., "K2"), including K2 INTELLIGENCE, K2 INTELLIGENCE (Stylized), K2 GLOBAL, K2 GLOBAL CONSULTING, K2 GLOBAL NETWORK, K2N, and K2O (collectively the "Infringing Marks"), in connection with investigative services targeted to the very same financial service clients that K2 Advisors serves.

2.      This is a civil action concerning: (i) the infringement of federally registered service marks in violation of the United States Trademark Act of 1946, as amended, 15 U.S.C. § 1114; (ii) unfair competition in violation of Section 43(a) of the United States Trademark Act of 1946, as amended, 15 U.S.C. § 1125(a); and (iii) related claims of trademark infringement, unfair competition, dilution, and injury to business reputation in violation of the laws of the State of New York and the common law.

## PARTIES

3.      K2 Advisors, L.L.C. is a Delaware limited liability company with its principal place of business at 300 Atlantic Street, 12th Floor, Stamford, CT 06901.

4.      K2/D&S Management Co., L.L.C. is a Delaware limited liability company with its principal place of business at 300 Atlantic Street, 12th Floor, Stamford, CT 06901.

5.      On information and belief, K2 Global Partners L.L.C. is a privately held limited liability company with its principal place of business at 845 Third Avenue, 4th Floor, New York, NY 10022.

6.      On information and belief, K2 Intelligence, Inc. was formerly known as K2 Global Consulting, Inc., and is a Delaware corporation with its principal place of business at 845 Third Avenue, 4th Floor, New York, NY 10022.

7.      On information and belief, K2 Intelligence L.L.C. was formerly known as K2 Global Consulting, N.A. L.L.C. and is a Delaware limited liability company with its principal place of business at 845 Third Avenue, 4th Floor, New York, NY 10022.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over the counterclaims under 15 U.S.C. §§ 1121(a) and 1051, *et seq.*, and 28 U.S.C. §§ 1331, 1332, 1338, and 1367, combined with

related claims for trademark infringement, unfair competition, dilution, and injury to business reputation under state law and the common law.

9.      Venue is proper under 28 U.S.C. § 1391 because Counterclaim-Defendants' principal place of business is located in this district, the claims against Counterclaim-Defendants arise out of business that it transacted in this district, and a substantial part of the claims arose in this district.

## FACTS

### The K2 Advisors Name and Marks

10.      K2 Advisors is now, and since at least 1994 has been, engaged in the business of providing hedge fund solutions.  Its world-class and globally recognized services include a wide range of hedge fund strategies, a variety of investment programs, and investment advisory and management services.  K2 Advisors specializes in advising on hedge fund portfolios, which includes providing due diligence, investment risk analysis, risk management, and related services.  K2 Advisors serves hundreds of clients across the globe, including corporations, large public and union pension funds, insurance companies, foundations, and endowments.  K2 Advisors has steadily grown into one of the largest multi-billion dollar hedge fund investment advisory firms in the world.  K2 Advisors has established and maintained over the years a reputation for excellence among its consumers and the public generally.  A sample copy of K2 Advisors' marketing materials is attached to these counterclaims as **Exhibit A**.

11.      Since at least 1994, K2 Advisors has conducted its business under the trade names K2 Advisors and K2, though it has always been generally known as and referred to by members of the trade and the public as "K2."

12.     As early as 1994, K2 Advisors adopted and began to use, and since then continues to use, in interstate commerce the marks K2 and K2 ADVISORS as its primary marks for its investment advisory and management services.

13.     Since at least 1994, K2 Advisors has extensively promoted its investment advisory and management services under the K2 Advisors Marks.  K2 Advisors' business and services have become extremely successful under the K2 Advisors Marks, and K2 Advisors currently manages approximately $9.5 billion in assets (as of August 1, 2013).

14.     K2 Advisors regularly participates in industry-wide conferences on topics related to risk management and due diligence.  At such events, K2 Advisors' employees present on related topics and are invited to speak as featured panelists.

15.     In 2010, David Saunders, CEO of K2 Advisors, spoke about "Managing Risk Across the Whole Portfolio" at the Pension Risk Management in a New Era Conference hosted by *Pensions & Investments* and Towers Watson.

16.     On September 19, 2012, Kelsey Biggers, Head of Risk Management at K2 Advisors, was featured on a panel called "Hedge Fund Operations Roundtable" at the Reuters HedgeWorld Conference.

17.     On October 1, 2012, Andrew Kandiew, Senior Managing Director and Head of Operational Due Diligence at K2 Advisors, was featured on a panel called "'Look Under the Hood' at Counterparty Risk & the Role of Prime Brokers" at the Hedge Fund Operational Due Diligence Conference.

18.     K2 Advisors has also received considerable recognition in the financial services industry, including for its due diligence and risk management services, and is regularly featured

in the articles of widely distributed financial publications such as *Institutional Investor*, *Fund Fire*, and *Pensions & Investments*.

19.     On March 22, 2010, Standard & Poor's, a leader in financial-market intelligence, assigned a four out of five star rating to a fund managed by K2 Advisors, and specifically noted, "In S&P's view, a key strength of K2's [referring to K2 Advisors] investment capability is the rigour of its due diligence and risk-management processes . . . ."

20.     On May 21, 2013, *Institutional Investor*, a leading publisher of international finance news, ranked K2 Advisors nineteenth in its list of "Top 50 Funds of Hedge Funds" in the industry.

21.     By virtue of the widespread sales, advertising and promotion of K2 Advisors' business and services under the K2 Advisors Marks, the K2 Advisors Marks have become respected and well-known, and are recognized and relied upon as identifying the business, solutions, and services of K2 Advisors and distinguishing them from the business, products, and services of others.

22.     K2 Advisors also has invested a tremendous amount of time and effort, as well as expended considerable resources, building a trusted reputation among hedge funds, which manage the assets of K2 Advisors' clients.  For nearly twenty years, K2 Advisors has built and maintained relationships with hedge fund personnel who chose to partner with K2 Advisors because of its stellar reputation in the financial services industry.  K2 Advisors takes more than 1,000 meetings a year with hedge fund personnel to cultivate relationships in the industry. Because the best hedge funds are very selective about their clients, the strength of K2 Advisors' reputation is critical to its success.  Confusion in the marketplace with Counterclaim-Defendants can and will tarnish this hard-earned reputation.

23.     K2 Advisors' renown for its due diligence and risk analysis and management services is a critical component of K2 Advisors' stellar reputation.  In April 2012, K2 Advisors' public relations firm conducted a study of current, former, and prospective clients and consultants regarding the recognition of K2 Advisors' brand in the risk management and due diligence industry.  Anonymous respondents discussed these services—which directly overlap with Counterclaim-Defendants'—and were quoted as stating the following: "When I think of K2 they've got a great brand in terms of risk management and risk control, and that's a good thing, particularly in the world of hedge funds, as they've showcased well, and continue to pursue that, and push the envelope on transparency on underlying hedge funds . . . ."  "[A]s a fiduciary, K2 is as high as you can get."  "I was very impressed by the quality and by the risk management, which is something I care about because I thought the amount of time, effort and resources they put into that are very impressive.  Everyone tells you that it's important, but a lot of times you come away feeling it's not important. At K2, I came away feeling that it actually is important." "The portfolio construction and risk management is one of their strengths, I would say they're very impressive people."  "K2's is probably the best, there's no doubt about it quantitatively they provide a lot of reporting and access to risk analysis."  "We gave them assets because we really valued their due diligence process, their oversight of managers, and their ongoing communications with us."

24.     The K2 Advisors Marks have been duly applied for and/or registered in the United States Patent and Trademark Office ("U.S. PTO").  Among  these applications and registrations owned by K2 Advisors are the following[1]:

---

[1] The highlighted portions of this chart indicate that the identical services are listed in Counterclaim-Defendants' trademark applications and/or registrations filed with the U.S PTO or inclusive of services offered by Counterclaim-Defendants.

| Mark | Services |
|---|---|
| **K2 ADVISORS**<br><br>Registered – Aug. 28 2001<br>Reg. No. 2,481,600<br>First Use – Oct. 1994<br>First Use in Commerce – Oct. 1994 | Class 36 – Investment advisory and management services; investment of funds for others |
| **K2**<br><br>Registered – Apr. 5, 2011<br>Reg. No. 3,940,917<br>First Use – Aug. 1994<br>First Use in Commerce – Aug. 1994 | Class 36 – Investment advisory and management services; investment of funds for others; hedge fund investment services; none of the aforementioned services related to specialized sports investments |
| **K2 ADVISORS**<br><br>Filed – Apr. 24, 2012<br>Ser. No. 85/606,259<br>First Use – Aug. 1994<br>First Use in Commerce – Aug. 1994 | Class 36 – Financial services, namely, management of funds of hedge funds; financial risk management; financial risk management consultation; investment advice; investment advisory services; non-discretionary investment advisory services, namely, supporting and advising on all aspects of direct hedge fund investing, portfolio construction, fund sourcing, due diligence, and ongoing portfolio monitoring; Investment and financial services, namely, financial portfolio management and analysis, asset allocation, asset management, private asset management, and financial risk planning; financial due diligence and performing financial manager due diligence for others; monitoring of hedge fund investments for others; creating customized hedge fund portfolios for others; investment consultation; fund investment consultation; none of the aforementioned services related to specialized sports investments |
| **K2**<br><br>Filed – Apr. 24, 2012<br>Ser. No. 85/606,237<br>First Use – Aug. 1994<br>First Use in Commerce – Aug. 1994 | Class 36 – Financial services, namely, management of funds of hedge funds; financial risk management; financial risk management consultation; investment advice; investment advisory services; non-discretionary investment advisory services, namely, supporting and advising on all aspects of direct hedge fund investing, portfolio construction, fund sourcing, due diligence, and ongoing portfolio monitoring; Investment and financial services, namely, financial portfolio management and analysis, asset allocation, asset management, private asset management, and financial risk planning; financial due diligence and performing financial manager due diligence for others; monitoring of hedge fund investments for others; creating customized hedge fund portfolios for others; investment consultation; fund investment consultation; none of the aforementioned services related to specialized sports investments |

Copies of the registrations and application details are attached to these counterclaims as **Exhibits B through E**.  Each of the registrations is valid and subsisting, and in full force and effect, and each of the applications is live and pending.  K2 Advisors is the owner of the registrations and applications, the marks shown therein, and all of the business and goodwill connected therewith.

25.     K2 Advisors' registration for K2 ADVISORS, Reg. No. 2,481,600, which issued August 28, 2001, is now incontestable under the United States Trademark Act of 1946, as amended, 15 U.S.C. § 1065.

26.     K2 Advisors' registrations for K2 ADVISORS, Reg. No. 2,481,600, and for K2, Reg. No. 3,940,917, and K2 Advisors' applications for K2 ADVISORS, Ser. No. 85/606,237, and for K2, Ser. No. 85/606,237, serve as constructive notice of K2 Advisors' prior service mark rights.

27.     In addition to its tremendous strength in the United States, K2 Advisors' trademarks are globally recognized.  In fact, K2 Advisors owns service mark filings for the K2 Advisors Marks in a number of foreign countries including, but not limited to, Australia, Canada, China, the European Union, Hong Kong, India, Japan, Malaysia, Mexico, New Zealand, Norway, Singapore, South Korea, and Switzerland.

### Counterclaim-Defendants and Their Infringing Marks

28.     On information and belief, Counterclaim-Defendants formed their business in 2009, nearly 15 years after K2 Advisors first began using the K2 Advisors Marks.  On further information and belief, Counterclaim-Defendants incorporated K2 Intelligence, Inc. on August 13, 2010, and incorporated K2 Intelligence, L.L.C. on October 22, 2010, nearly sixteen years after K2 Advisors first began using the K2 Advisors Marks.

29.     Counterclaim-Defendants provide investigative and risk analytics consulting services, including within this district and use the Infringing Marks in connection with services that include advising companies on complex business risks, including financial, legal, investment, and technological risks, and providing risk management, risk assessment, and investigative and due diligence services to businesses and investors.

30.     Counterclaim-Defendants provide their services to the same institutional investors, hedge funds and other financial services companies that serve as K2 Advisors' clients, vendors and other commercial counterparties. Moreover, Counterclaim-Defendants and K2 Advisors operate through the same channels of trade that include trade shows and investment advisory conferences.

31.     On or around July 8, 2010, Jules B. Kroll, Chairman of Counterclaim-Defendants, was featured on a moderated panel on "Best Practices in Due Diligence for Alternative Investing" at the Founder's Council of the Greenwich Roundtable, a non-profit research and education organization for investors who allocate capital to alternative investments. The discussion was sponsored by Commonfund, which is an investment advisor for institutional investors. K2 Advisors' clients are institutional investors, specifically those that seek to allocate capital to alternative investments, such as hedge funds. The panel discussed issues directly relevant to the due diligence services that K2 Advisors provides.

32.     On or around March 14, 2011, Jules B. Kroll, on behalf of Counterclaim-Defendants, was featured on a panel entitled "Lie to Me: Investment Due Diligence and the Science of Behavioral Analysis" at Commonfund's 2011 Forum, which is, according to their website, "recognized year-in and year-out as the premier investment conference designed exclusively for sophisticated institutional investors." The topic of that panel specifically

included a discussion of manager selection, while the overall program that year focused on key issues such as risk management, both key elements of K2 Advisors' services.

33.     K2 Advisors and Counterclaim-Defendants both attend conferences hosted by Managed Funds Association ("MFA"), an advocacy, education, and communications organization established to enable hedge fund and managed futures firms in the alternative investment industry.  In 2010, Jules B. Kroll, on behalf of Counterclaim-Defendants, was featured on a panel entitled "Detecting Operational Problems and Financial Shenanigans" at the MFA hosted Network 2010 Conference.  That same year, Brian Walsh, Managing Director and Head of Research at K2 Advisors, was featured on a panel entitled "Asset Owners Speak Out" at the MFA hosted Outlook 2010 Conference.  In fact, both K2 Advisors and Counterclaim-Defendants and their respective panel events were included in MFA's "2010 Year in Review" booklet.  A copy of the booklet is attached to these counterclaims as **Exhibit F**.

34.     Counterclaim-Defendants' visible participation at conferences and panels that are so closely tied to K2 Advisors' core business offerings demonstrates how both parties operate through the same channels of trade.

35.     On information and belief, Counterclaim-Defendants offer products and services, including software, which allow customers to scrutinize the personal, social, and business relationships of hedge fund personnel.

36.     Counterclaim-Defendants own the following applications, all of which were signed under penalty of perjury, with the intent to use all services currently pending with the U.S. PTO[2]:

---

[2] The highlighted portions of this chart indicate that the identical services are listed in K2 Advisors' trademark applications and/or registrations filed with the U.S. PTO or inclusive in services offered by K2 Advisors.

| Mark | Services |
|---|---|
| **K2 INTELLIGENCE**<br><br>(disclaims "INTELLIGENCE")<br>Filed – Jul. 5, 2012<br>Ser. No. 85/669,225<br>Section 1(b) Intent to Use | Class 35 – Business investigation services in the fields of corporate intelligence, corporate integrity, business fraud, anti-money laundering, sexual misconduct, anti-corruption, computer security, business reputation, background investigations, litigation support, and due diligence; business risk management in the fields of corporate intelligence, corporate integrity, business fraud, anti-money laundering, sexual misconduct, anti-corruption, computer security, business reputation, background investigations, litigation support, and due diligence; business risk management services in the fields of corporate intelligence, corporate integrity, business fraud, anti-money laundering, sexual misconduct, anti-corruption, computer security, business reputation, background investigations, litigation support, and due diligence; providing an on-line commercial information directory on the internet, in the field of risk advisory consultancy services; providing an internet website featuring an online marketplace for exchanging services with other users, in the field of risk advisory consultancy services<br><br>Class 36 – Financial risk management services in the fields of corporate intelligence, corporate integrity, business fraud, anti-money laundering, sexual misconduct, anti-corruption, computer security, business reputation, background investigations, litigation support, and due diligence<br><br>Class 42 – Risk consulting services in the fields of corporate intelligence, corporate integrity, business fraud, anti-money laundering, sexual misconduct, anti-corruption, computer security, business reputation, background investigations, litigation support and due diligence<br><br>Class 45 – Private investigation services; security consulting services in the fields of business reputation, background investigations, business fraud, anti-money laundering, anti-corruption and computer security; private investigation services; investigation and consulting services in the field of environmental risk assessment; investigation and consulting services in the field of environmental compliance |
| **K2 INTELLIGENCE (Stylized)**<br><br>(disclaims "INTELLIGENCE")<br>Filed – Jul. 10, 2012<br>Ser. No. 85/673,251<br>Section 1(b) Intent to Use | *Same services in Classes 35, 36, 42, and 45 as described in the K2 INTELLIGENCE application* |

| K2 GLOBAL<br><br>(disclaims "GLOBAL")<br>Filed – Dec. 16, 2010<br>Ser. No. 85/200,142<br>Section 1(b) Intent to Use | Class 35 – Business investigation services in the fields of corporate intelligence, corporate integrity, business fraud, anti-money laundering, sexual misconduct, anti-corruption, computer security, ==business reputation, background investigations==, litigation support, and ==due diligence==; business ==risk management== in the fields of corporate intelligence, corporate integrity, business fraud, anti-money laundering, sexual misconduct, anti-corruption, computer security, ==business reputation, background investigations==, litigation support, and ==due diligence==; business ==risk management services== in the fields of corporate intelligence, corporate integrity, business fraud, anti-money laundering, sexual misconduct, anti-corruption, computer security, ==business reputation, background investigations==, litigation support, and ==due diligence==<br><br>Class 36 – ==Financial risk management services== in the fields of corporate intelligence, corporate integrity, business fraud, anti-money laundering, sexual misconduct, anti-corruption, computer security, ==business reputation, background investigations==, litigation support, and ==due diligence==<br><br>Class 42 – Private investigation services; ==risk consulting services== in the fields of corporate intelligence, corporate integrity, business fraud, anti-money laundering, sexual misconduct, anti-corruption, computer security, ==business reputation, background investigations==, litigation support and ==due diligence==; investigation and consulting services in the field of environmental risk assessment<br><br>Class 45 – Security consulting services in the fields of ==business reputation, background investigations==, business fraud, anti-money laundering, anti-corruption and computer security |
| K2 GLOBAL CONSULTING<br><br>(disclaims "GLOBAL CONSULTING")<br>Filed – Dec. 16, 2010<br>Ser. No. 85/200,141<br>Section 1(b) Intent to Use | *Same services in Classes 35, 36, 42, and 45 as described in the K2 GLOBAL application* |
| K2 GLOBAL NETWORK<br><br>(disclaims "GLOBAL NETWORK")<br>Filed – Dec. 16, 2010<br>Ser. No. 85/200,145<br>Section 1(b) Intent to Use | Class 35 – Providing an on-line commercial information directory on the internet, in the field of ==risk advisory consultancy services==; providing an internet website featuring an online marketplace for exchanging services with other users, in the field of ==risk advisory consultancy services== |

| K2N<br><br>Filed – Dec. 16, 2010<br>Ser. No. 85/200,143<br>Section 1(b) Intent to Use | Class 35 – Providing an on-line commercial information directory on the internet, in the field of ==risk advisory consultancy services==; providing an internet website featuring an online marketplace for exchanging services with other users, in the field of ==risk advisory consultancy services== |
|---|---|
| K2O<br><br>Filed – Dec. 16, 2010<br>Ser. No. 85/200,147<br>Section 1(b) Intent to Use | Class 35 – ==Business advisory services, consultancy and information== and business research relating to identity authentication and verification, publicity, reputation management, identity management and security administration; online ==business advisory services, consultancy and information== and business research relating to identity authentication and verification, publicity, reputation management, identity management and security administration, provided via the internet<br><br>Class 42 – Application service provider (ASP) featuring software that provides customer care and services in the field of identity authentication and verification, publicity, reputation management, identity management and security administration |

Copies of the application details are attached to these counterclaims as **Exhibits G through M**.

37.     On information and belief, Counterclaim-Defendants applied to register the Infringing Marks with the U.S. PTO, without K2 Advisors' authorization or knowledge, after it had constructive notice of K2 Advisors' prior rights in the K2 Advisors Marks.

**The U.S. PTO Determined that Counterclaim-Defendants' Marks are Likely to Cause Confusion with the K2 Advisors Marks**

38.     Two separate Trademark Examining Attorneys at the U.S. PTO independently concluded that Counterclaim-Defendants' K2-related marks are likely to cause confusion with the K2 Advisors Marks, because the marks are highly similar and the services closely related. The experts at the U.S. PTO determined that consumer confusion between the parties' marks is likely, without even having been made aware of the multiple instances of actual confusion that have already occurred, and which are detailed below.

39.     On October 23, 2012, Andrew Rhim, Trademark Examining Attorney at the U.S. PTO, issued office actions against the K2 GLOBAL and K2 GLOBAL CONSULTING

18

applications, refusing to register the marks "because of a likelihood of confusion with the marks in U.S. Registration 2481600 and 3940917 [K2 Advisors' prior registrations for K2 and K2 ADVISORS]."  Copies of the office actions are attached to these counterclaims as **Exhibits N through O**.

40.     In both office actions, Trademark Examining Attorney Rhim found that "the applicant's mark . . . is similar in sound, appearance and commercial impressions to the marks K2 ADVISORS and K2 in the cited registrations."  He continued by noting that "the applicant's mark and both registered marks share the confusingly identical sounding, similar appearing and dominant term K2.  The marks therefore share a similar overall commercial impression."  Finally, Trademark Examining Attorney Rhim noted that "[t]he applicant's services are related to registrant's services because these financial and business services are commonly provided by the same companies/entities, and therefore these services would be encountered by the same consumers under circumstances such that offering the services under confusingly similar marks would lead to the mistaken belief that they come from, or are in some way associated with, the same source."  He attached evidence from the U.S. PTO's database, consisting of a representative sampling of third-party marks registered for use in connection with the same or similar services as those of K2 Advisors and Counterclaim-Defendants.  In evaluating this evidence, he determined that "[t]his evidence shows that the services listed therein, namely, financial risk management and investment advisory services, are of a kind that may emanate from a single source under a single mark."

41.     On October 29, 2012, Ronald McMorrow, Trademark Examining Attorney at the U.S. PTO, issued office actions against the K2 INTELLIGENCE and K2 INTELLIGENCE (Stylized) applications, refusing to register the marks "because of a likelihood of confusion with

the marks in U.S. Registration Nos. 2481600, 3940917 [K2 Advisors' prior registrations for K2 and K2 ADVISORS] . . . ."  Copies of the office actions are attached to these counterclaims as **Exhibits P though Q**.

42.     In both office actions, Trademark Examining Attorney McMorrow found that Counterclaim-Defendants' marks are highly similar to the K2 Advisors Marks, because "[t]he dominant portion of all of these marks is K2."  He noted that "[a]lthough marks are compared in their entireties, one feature of a mark may be more significant or dominant in creating a commercial impression."  Finally, Trademark Examining Attorney McMorrow determined that the services of K2 Advisors and Counterclaim-Defendants are "closely related . . . in that they frequently emanate from common sources with the same mark being used as an indicator of their source."  He attached evidence from the U.S. PTO's database, consisting of a representative sampling of third-party marks registered for use in connection with the same or similar services as those of K2 Advisors and Counterclaim-Defendants and concluded that "[t]his evidence shows that the goods and/or services listed therein, namely, financial risk management and investment management, are of a kind that may emanate from a single source under a single mark."

### Actual Consumer Confusion

43.     There are several instances of actual confusion between K2 Advisors and Counterclaim-Defendants.  On or around October 2, 2009, Jules B. Kroll, on behalf of Counterclaim-Defendants, appeared and spoke at a panel on corporate bond ratings at the Council of Institutional Investors Conference.  Representatives from K2 Advisors were also in attendance at that same conference, as a substantial number of K2 Advisors' assets are public fund assets.  A K2 Advisors employee, Joseph Hernandez, reported that several conference

attendees, including institutional investors, approached Mr. Hernandez mistakenly believing that Mr. Kroll was affiliated with K2 Advisors.

44.     On January 27, 2011, Jeroen Pielman, a prospective hedge fund manager, was scheduled to meet with K2 Advisors in their former New York office located at 570 Lexington Avenue.  He mistakenly arrived at the former New York office of Counterclaim-Defendants at 599 Lexington Avenue.

45.     On information and belief, on September 1, 2011, Counterclaim-Defendants opened a London office located at Albemarle House, 1 Albemarle Street, London W1S 4HA. According to Google Maps, Counterclaim-Defendants' London office is a mere 174 feet (or a 38 second walk) away from K2 Advisors' former London office, located at 43-44 Albemarle Street, London, W1S 4JJ.  Due to the confusing similarity of the parties' marks and services, coupled with the physical proximity of their London offices, K2 Advisors has had several problems involving confused deliveries and callers.  This is a significant business risk in light of the fact that confidential and personal financial information is being communicated.

46.     K2 Advisors' current New York office is located at 399 Park Avenue, 38th Floor, New York, NY 10022.  Counterclaim-Defendants have established their current headquarters mere minutes away at 845 Third Avenue, 4th Floor, New York, NY 10022.  According to Google Maps, Counterclaim-Defendants' New York office is a mere 0.3 miles from K2 Advisors' New York office.  The confusing similarity of the parties' marks and services, coupled with the physical proximity of their New York offices, is likely to lead to actual confusion.

### Similarity of the Marks

47.     The K2 Advisors Marks and the Infringing Marks are near-identical, as the most prominent portion of both marks is "K2."

48.     A trademark or service mark disclaimer is a statement made of public record that signifies that the applicant or registrant does not claim the exclusive right to use specific "disclaimed" elements of the mark in a trademark or service mark application.  Because Counterclaim-Defendants have disclaimed all portions of their trademarks other than "K2" (i.e., "INTELLIGENCE," "GLOBAL," "GLOBAL CONSULTING," and "GLOBAL NETWORK"), "K2" is the only portion of their marks that is distinctive.

49.     The appearance of the parties' marks in their respective marketing materials, as shown below, is highly similar: the dominant portion of both marks is "K2," which is made bold and presented in a striking color set apart from the remainder of their respective marks, which is presented in grey to diminish the significance of the other wording.  The parties' marks are also presented in a similar sans-serif typeface.



50.     Although Counterclaim-Defendants have no rights in the mark "K2" standing alone, and K2 Advisors does, they emphasize the "K2" portion of the Infringing Marks in their marketing campaigns, increasing the likelihood of consumer confusion.  For example, in a marketing video entitled "K2 Difference" Counterclaim-Defendants repeatedly pair "K2" with various descriptive words such as "difference," "experience," "technology," and "perspective" creating the impression that its brand is in fact, "K2" standing alone.  Screenshots from Counterclaim-Defendants' marketing video entitled "K2 Difference" (available at http://vimeo.com/43858257), which demonstrate this infringing use of K2 Advisors' K2 mark, are included below:



K2 Advisors has registered rights in K2, and Counterclaim-Defendants trade off the name recognition of K2 in the financial services industry in these marketing materials.

**Proximity and Competitiveness of the Services**

51.    Since at least 1994, K2 Advisors has offered financial services, including but not limited to risk management services, including consultation, due diligence, and risk planning, among other services, to clients within the financial services industry, including hedge funds.

52.    Counterclaim-Defendants offer risk management, risk assessment, investigative and due diligence services, also to clients within the financial services industry.

53.    On April 5, 2012, the President signed into law the Jumpstart Our Business Startups Act ("JOBS Act"), which among other things, lifts the ban on "general solicitation" and advertising in specific kinds of private placements of securities.  As a result of the JOBS Act, financial institutions, including K2 Advisors and Counterclaim-Defendants, are able to more directly market or advertise to prospective customers.  There is thus a greater likelihood that the parties will market and promote their respective services, substantially increasing the likelihood of consumer confusion.

54.     Sections from K2 Advisors' and Counterclaim-Defendants' marketing materials are included starting on the next page, below.  These marketing materials, which demonstrate the parties' directly overlapping services, are also provided to the same potential customers.



### Heritage

The essence of K2's success centers on the quality, integrity, and pedigree of its employees. While constituents and peers may recognize the firm for its sophisticated risk management systems, transparency leadership, rigorous and deep fund research, due diligence, and pioneering portfolio construction tools, perhaps the one defining characteristic from which K2 derives the most pride is the quality of its people.

### Rigorous and Immersive Manager Selection

K2 executes a disciplined and rigorous manager selection process that seeks to identify 'best-in-class' managers for each of the alternative strategies in which the firm invests. The process combines bottom-up and top-down methodologies and employs proprietary quantitative tools and qualitative analysis. When evaluating managers K2 follows a collaborative five-step process incorporating five discrete groups – research, portfolio construction, risk, operational due diligence, and legal and compliance – each with veto authority over the others with regard to any potential investment. While very often these groups work in conjunction, their autonomous decision making authority is never relinquished, thereby ensuring the integrity and efficacy of the entire due diligence process.

### Holistic Approach to Portfolio Risk Management

The systems and practices K2's risk team employs – the firm believes – are the most sophisticated and capable in the industry, and extend well beyond the tools offered by standalone third-party risk services. Assessing true risk requires looking at each fund and strategy in a granular way, and at the individual security level. One model, data point, or set of data points cannot be deemed suitable to define risk, particularly when applied to the complex investment landscapes of today. To obtain a truly holistic view of risk, K2 monitors exposures across risk types (market, credit, concentration, and liquidity), asset classes, and instruments, at both the underlying fund level and portfolio level. Among the factors observed are betas, exposures by sector and sub-sector, exposures by region, leverage, liquidity, correlations, and volatility.



### What We Do

K2 Intelligence conducts thorough investigations, does deep due diligence, provides superior analytic services, and takes advisory assignments all over the world. The firm employs a wide range of traditional investigative techniques—often amplified by the application of proprietary technologies designed especially to interrogate large data sets, detect behavioral anomalies, and monitor public sentiment.

Our constant priority is to secure a result for our client. This means that our senior people give your assignment their full attention. It also means we prize creativity over standard responses, and focus on giving clients impartial analysis and experienced judgment, not just data.

Our broad range of corporate, private and government clients rely on our reputation for thorough and unbiased work to further their own endeavors.

### How We Can Help You

K2 Intelligence specializes in business intelligence, investigative diligence, anti-corruption consulting, implementing AML and OFAC compliance solutions, board advisory services and complex data-oriented analytics solutions. We work for public and private companies; hedge funds and private equity firms; litigators and bankruptcy attorneys; financial institutions; as well as private and sovereign clients. Our Thacher Associates division is the leading firm providing construction integrity monitoring and compliance services as well as range of other investigative and monitoring capabilities.financial institutions implementing Anti-Money Laundering and OFAC compliance; as well as private and sovereign clients seeking to recover assets.

55.     On April 7, 2011, Jeremy Kroll, on behalf of Counterclaim-Defendants, was quoted in a www.bloomberg.com video and article entitled, "K2's Kroll Says Insider Trading Now an 'Enterprise Risk': Video" about insider trading investigations.  In that article, Mr. Kroll makes clear that the software and services offered by Counterclaim-Defendants are provided to hedge fund clients to track the personal, social, and business relationships of their traders and analysts.  A copy of the article is attached to these counterclaims as **Exhibit R.**

56.     Counterclaim-Defendants' "K2 Intelligence Due Diligence" marketing brochure states: "*K2 conducts due diligence assignments all over the world for a wide range of corporate, financial and government clients . . . .  K2 investigates various aspects of potential business deals including evaluation of management teams and forensic evaluation of financials*" (emphasis added).  A copy of Counterclaim-Defendants' marketing material entitled "K2 Intelligence Due Diligence" is attached to these counterclaims as **Exhibit S**.

57.     Counterclaim-Defendants' "K2 Intelligence Investment Intelligence" marketing brochure states: "*K2 provides qualitative risk analysis, research and investigative capabilities for hedge funds, private equity firms and financial institutions. . . . Advise you on* regulatory, geopolitical, *financial*, and security *risks*."  A copy of Counterclaim-Defendant's marketing material entitled "K2 Intelligence Investment Intelligence" is attached to these counterclaims as **Exhibit T**.

58.     Counterclaim-Defendants' "K2 Intelligence Press Kit" marketing brochure states: "*K2 Intelligence conducts thorough investigations, does deep due diligence, provides superior analytic services, and takes advisory assignments all over the world. . . . We work for public and private companies; hedge funds and private equity firms*; litigators and bankruptcy attorneys; *financial institutions; as well as private and sovereign clients*" (emphasis added).  A copy of

Counterclaim-Defendants' marketing material entitled "K2 Intelligence Press Kit" is attached to these counterclaims as **Exhibit U**.

59.     A blog entry from Counterclaim-Defendants' website at www.k2intelligence.com, entitled "June Newsletter: Our Clients Ask for Reputational Diligence," posted on July 1, 2012 by Jeremy Kroll, states: "*Reputational Diligence can take two forms: a check of public records or an in-depth reputational review covering a subject's entire career, his or her ownership interests and any political connections that have played a role in his or her business. Proper reputational diligence also evaluates the subject's operational behavior against an industry's standards and practices*" (emphasis added).  A copy of Counterclaim-Defendants' blog entry, entitled "June Newsletter: Our Clients Ask for Reputational Diligence," is attached to these counterclaims as **Exhibit V**.

60.     A blog entry from Counterclaim-Defendants' website at www.k2intelligence.com, entitled "Insider Trading: New Approaches to an Old Problem," posted on January 11, 2011 by Jeremy Kroll, states: "*We believe that only way for funds to survive, let alone thrive, in this sort of regulatory environment is to examine and evaluate potential risks surrounding traders and analysts before large-scale problems ensue. We also believe that the best way to approach these public policy issues is through innovative private sector solutions. That's why, over the coming weeks and months, we'll be working with hedge funds, former regulators, and industry leaders on the deployment of products and services focused on identifying and evaluating trader relationship risks, evaluating compliance and trading threats, providing operational due diligence, and staying abreast of the ever-changing regulatory landscape (from Dodd-Frank to the upcoming UK Bribery Act)*" (emphasis added).  A copy of Counterclaim-Defendants' blog

entry, entitled "Insider Trading: New Approaches to an Old Problem," is attached to these counterclaims as **Exhibit W**.

61.     Additional evidence demonstrating the substantial overlap in the parties' services, including in the areas of operational due diligence and risk management services, is attached to these counterclaims at **Exhibit X**.

### Strength of the K2 Advisors Marks

62.     Since at least 1994, K2 Advisors has been using its distinctive K2 and K2 ADVISORS marks in connection with a wide variety of financial and investment services, including investment advisory services, hedge fund investment services, financial risk management consultation, financial risk planning, and due diligence.

63.     K2 Advisors has expended substantial efforts and money in promoting the K2 Marks.  As a result of K2 Advisors' efforts, the K2 Advisors Marks are distinctive and have become identified in the minds of consumers exclusively with K2 Advisors' high quality services.

64.     K2 Advisors owns an incontestable registration for its K2 ADVISORS service mark, as well as a registration for its K2 service mark.  Those two registrations alongside K2 Advisors' two additional applications for the K2 Advisors Marks serve as constructive notice of K2 Advisors' prior rights.  Further, K2 Advisors is recognized throughout the financial services industry as a world-class fund of hedge funds manager and a leader in investment advisory services.

### Facts Leading to Counterclaim-Defendants' Declaratory Judgment Complaint

65.     On April 19, 2011, counsel for K2 Advisors wrote to Jules B. Kroll expressing its concern with respect to Counterclaim-Defendants' use and applications to register the K2

27

GLOBAL, K2 GLOBAL CONSULTING, K2 GLOBAL NETWORK, K2N, and K2O marks. A copy of this letter is attached to Counterclaim-Defendants' Complaint, ECF Document 1, as Exhibit A.

66.     Counsel for K2 Advisors never received a response to their letter dated April 19, 2011. Counsel for K2 Advisors followed up by calling the headquarters for Counterclaim-Defendants on multiple occasions, but never received a substantive response.

67.     On March 21, 2013, counsel for K2 Advisors wrote to counsel for Counterclaim-Defendants, expressing its concern with respect to Counterclaim-Defendants' use and applications to register the Infringing Marks. A copy of this letter is attached to Counterclaim-Defendants' Complaint, ECF Document 1, as Exhibit B.

68.     On June 19, 2013, counsel for Counterclaim-Defendants responded. A copy of this letter is attached to Counterclaim-Defendants' Complaint, ECF Document 1, as Exhibit C.

69.     Over the next several weeks, the parties discussed potential resolution of the dispute through e-mail correspondence and at least two conference calls.

70.     On July 12, 2013, nine key participants, including lead outside counsel, lead general counsel and in-house counsel, and the Co-Founder and CEO for K2 Advisors as well as lead outside counsel, the CFO, and the Co-Founder and CEO for Counterclaim-Defendants, participated in a conference call to discuss amicable settlement of the dispute.

71.     On July 29, 2013, ten key participants, including lead outside counsel, lead general counsel and in-house counsel, and the Co-Founder and CEO for K2 Advisors as well as former lead outside counsel, new lead outside counsel, the CFO, and the Co-Founder and CEO for Counterclaim-Defendants, participated in a conference call to discuss amicable settlement of the dispute.

72.     On July 31, 2013, a mere two days after the previously-referenced settlement conference took place, and while the parties continued to engage in what K2 Advisors believed to be good faith settlement negotiations, Counterclaim-Defendants filed the present action and filed a declaratory judgment complaint against K2 Advisors.

## FIRST CLAIM FOR RELIEF

### Service Mark Infringement– 15 U.S.C. § 1114

73.     K2 Advisors repeats and realleges each and every allegation of Paragraphs 1 through 72 above as if fully set forth herein.

74.     K2 Advisors owns registrations for the K2 and K2 ADVISORS marks, which are in full force and effect, the latter of which is incontestable.

75.     Counterclaim-Defendants, without authorization from K2 Advisors, have used and are continuing to use the Infringing Marks, which are confusingly similar to the K2 Advisors Marks.

76.     The unauthorized and wrongful use of the Infringing Marks for Counterclaim-Defendants' business and services is designed and calculated and is likely to cause confusion, to cause mistake, and to deceive consumers as to the sponsorship of Counterclaim-Defendants and their services.  Upon seeing the Infringing Marks being used by Counterclaim-Defendants and in connection with their services, consumers are likely to be confused into believing that Counterclaim-Defendants' business and services are sponsored by, affiliated with, or otherwise approved or endorsed by K2 Advisors, all to the detriment of K2 Advisors and the public.

77.     The aforesaid acts of Counterclaim-Defendants constitute use in commerce of colorable imitations of K2 Advisors' federally registered K2 Advisors Marks in violation of the United States Trademark Act of 1946, as amended, 15 U.S.C. § 1114.

78.     The acts of Counterclaim-Defendants have caused and will continue to cause great and irreparable injury to K2 Advisors, and unless these acts are restrained by this Court, they will continue and K2 Advisors will continue to suffer great and irreparable injury.

79.     K2 Advisors has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF

### Unfair Competition – 15 U.S.C. § 1125(a)

80.      K2 Advisors repeats and realleges each and every allegation of Paragraph 1 through 79 above as if fully set forth herein.

81.     K2 Advisors owns federal service mark registrations and has common law rights in the K2 Advisors Marks as set forth above.

82.     Counterclaim-Defendants' use of the Infringing Marks without K2 Advisors' knowledge, authorization, or approval, for the purpose of promoting the sale and offering for sale of Counterclaim-Defendants' services, constitutes misappropriation and misuse of the K2 Advisors Marks, unfair competition, false association, false advertising and unjust enrichment by Counterclaim-Defendants, all in violation of K2 Advisors' rights under Section 43(a) of the Trademark Act of 1946, as amended, 15 U.S.C. § 1125(a).

83.     The acts of Counterclaim-Defendants have caused and will continue to cause great and irreparable injury to K2 Advisors, and unless said acts are retrained by this Court, they will continue and K2 Advisors will continue to suffer great and irreparable injury.

84.     K2 Advisors has no adequate remedy at law.

## THIRD CLAIM FOR RELIEF

### Common Law Service Mark Infringement

85.     K2 Advisors repeats and realleges each and every allegation of Paragraph 1 through 84 above.

86.     K2 Advisors owns all rights, title, and interest in and to the K2 Advisors Marks, including all common law rights in such marks.

87.     Counterclaim-Defendants, without authorization from K2 Advisors, have used and are continuing to use the Infringing Marks, which are confusingly similar to the K2 Advisors Marks.

88.     The unauthorized and wrongful use of the Infringing Marks for Counterclaim-Defendants' business and services is designed and calculated and is likely to cause confusion, to cause mistake, and to deceive consumers as to the sponsorship of Counterclaim-Defendants and their services.  Upon seeing the Infringing Marks being used by Counterclaim-Defendants and in connection with their services, consumers are likely to be confused into believing that Counterclaim-Defendants' business and services are sponsored by, affiliated with, or otherwise approved or endorsed by K2 Advisors, all to the detriment of K2 Advisors and the public.

89.     Counterclaim-Defendants' acts constitute service mark infringement in violation of the common law of the State of New York.

90.     The acts of Counterclaim-Defendants have caused and will continue to cause great and irreparable injury to K2 Advisors, and unless said acts are restrained by this Court, they will continue and K2 Advisors will continue to suffer great and irreparable injury.

91.     K2 Advisors has no adequate remedy at law.

## FOURTH CLAIM FOR RELIEF

### Common Law Unfair Competition

92.     K2 Advisors repeats and realleges each and every allegation of Paragraph 1 through 91 above as if fully set forth herein.

93.     K2 Advisors owns federal trademark registrations and has common law rights in the K2 Advisors Marks as set forth above.

94.     Counterclaim-Defendants' use of the Infringing Marks without K2 Advisors' knowledge, authorization, or approval, for the purpose of promoting the sale and offering for sale of Counterclaim-Defendants' services, constitutes misappropriation and misuse of the K2 Advisors Marks, unfair competition, and unjust enrichment by Counterclaim-Defendants, all in violation of K2 Advisors' rights under the common law of the State of New York.

95.     The acts of Counterclaim-Defendants have caused and will continue to cause great and irreparable injury to K2 Advisors, and unless said acts are restrained by this Court, they will continue and K2 Advisors will continue to suffer great and irreparable injury.

96.     K2 Advisors has no adequate remedy at law.

## FIFTH CLAIM FOR RELIEF

### Dilution and Injury to Business Reputation under New York Law

97.     K2 Advisors repeats and realleges each and every allegation of Paragraph 1 through 96 above as if fully set forth herein.

98.     K2 Advisors owns federal service mark registrations and has common law rights in the K2 Advisors Marks as set forth above.

99.     Due to K2 Advisors' extensive marketing and provision of services under the K2 Advisors Marks, the K2 Advisors Marks have achieved wide spread regard and recognition

among businesses and consumers within the financial investment industry, as well as among the consuming public throughout the United States and abroad.

100.    Through K2 Advisors' prominent, long, and continuous use in commerce, including commerce within New York, the K2 Advisors Marks have been and continue to be well-known and distinctive.

101.    Counterclaim-Defendants' use of the Infringing Marks without K2 Advisors' knowledge, authorization, or approval, for the purpose of promoting the sale and offering for sale of Counterclaim-Defendants' services, dilutes the distinctive quality of the K2 Advisors Marks and lessens the capacity of such marks to identify and distinguish K2 Advisors' services. Counterclaim-Defendants' use of the Infringing Marks in connection with services for which it cannot control the quality is also likely to tarnish and blur the K2 Advisors Marks, thereby lessening the value of the K2 Advisors Marks as unique identifiers of K2 Advisors' services.

102.    The acts of Counterclaim-Defendants have caused and will continue to cause great and irreparable injury to K2 Advisors, and unless said acts are retrained by this Court, they will continue and K2 Advisors will continue to suffer great and irreparable injury, in violation of Section 360-L of the General Business Law of the State of New York.

103.    K2 Advisors has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, K2 Advisors requests the following relief:

A.    That Counterclaim-Defendants' Complaint be dismissed with prejudice;

B.    That judgment be entered in favor of K2 Advisors and against Counterclaim-Defendants' claims as set forth in its Complaint;

C.      That judgment be entered in favor of K2 Advisors and against Counterclaim-Defendants on K2 Advisors' counterclaims;

D.      That Counterclaim-Defendants and all of their agents, servants, employees, attorneys, affiliates, successors and assigns, and all persons in active concert or participation with them, or any of them, be preliminarily and permanently enjoined:

        1.      From doing business as K2 Global Partners, L.L.C., K2 Intelligence, Inc., and K2 Intelligence, L.L.C., or any business name, whether as an official name or as a d/b/a, that incorporates "K2" in any form;

        2.      From using K2 in connection with the advertising and promotion of Counterclaim-Defendants' business or the sale, offering for sale, advertising or promotion of Counterclaim-Defendants' services;

        3.      From using K2 on Counterclaim-Defendants' website, or any other website or other advertising and promotional materials relating to Counterclaim-Defendants, Counterclaim-Defendants' business or services.

E.      That Counterclaim-Defendants be ordered to file with the Court and serve upon K2 Advisors, within thirty (30) days of service of the order and injunction upon Counterclaim-Defendants, a report in writing and under oath setting forth in detail the manner and form in which Counterclaim-Defendants have complied with the order and injunction pursuant to 11 U.S.C. § 1116(a);

F.      That K2 Advisors be awarded the damages it has sustained arising from Counterclaim-Defendants' acts of infringement and unfair competition and that, in assessing damages, the Court in its discretion, pursuant to U.S.C. § 11179(a) enter a judgment for a sum above the actual damages found equal to three times the amount of said damages;

G.     That K2 Advisors be awarded its costs, expert witness fees, and reasonable

attorneys' fees incurred in connection with this action; and

H.     That this Court grant K2 Advisors such other further relief as the Court deems

fair, just, and equitable.

## JURY DEMAND

K2 Advisors hereby demands trial by jury on all issues triable to a jury.


Dated:          September 3, 2013


                                    Respectfully submitted,

                                    K2 ADVISORS, L.L.C. and
                                    K2/D&S MANAGEMENT CO., L.L.C.

                                    By its attorneys,


                                    _____
                                    Kristen McCallion (KM 5593)
                                    FISH & RICHARDSON P.C.
                                    601 Lexington Ave., 52nd Floor
                                    New York, New York 10022
                                    Tel: 212-641-2261
                                    Fax: 212-258-2291
                                    E-mail: McCallion@fr.com

                                    OF COUNSEL
                                    Lisa Greenwald-Swire (*Pro Hac Vice*
                                    Admission Pending)
                                    Kathy Tsai (*Pro Hac Vice* Admission
                                    Pending)
                                    FISH & RICHARDSON P.C.
                                    500 Arguello Street, Suite 500
                                    Redwood City, CA 94063-1566
                                    Telephone: 650-839-5070
                                    Facsimile: 650-839-5071
                                    E-mail: Greenwald-swire@fr.com
                                    E-mail: Tsai@fr.com

Andrew H. Schapiro (AS 9464)
Jessica A. Rose (JR 4300)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010-1601
Phone: (212) 849 7000
Fax: (212) 849-7100
Email: andrewschapiro@quinnemanuel.com
Email: jessicarose@quinnemanuel.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 3rd day of September, 2013, the foregoing

K2 ADVISORS, L.L.C. AND K2/D&S MANAGEMENT CO., L.L.C.'S ANSWER AND

COUNTERCLAIMS AGAINST K2 GLOBAL PARTNERS LLC, K2 INTELLIGENCE, INC.,

AND K2 INTELLIGENCE, LLC. was filed via electronic filing with the Clerk of the Court

using the CM/ECF system and that a copy hereof will be electronically served by the electronic

filing system directly upon all counsel of record

_____
Lisa Y. Ng